THE STATE ex rel. ARTHUR J. SCHMOHL v. JAMES ELLISON et al.

In Banc, February 9, 1916.

CONTRACTS: Insurance Policy and Supplement: Construing Together. Where by the main policy an insurance company promised to pay ten thosuand dollars to insured's mother in case of his accidental death "while a passenger in or on a public conveyance provided by a common carrier for passenger service (including the platform, steps, or running-board of railway or street railway cars)," and in the concurrent and separately signed supplement, supported by the one stipulated premium and attached to said main policy, promised to pay to insured five thousand dollars in case of the death of his mother "while riding as a passenger in a railway passenger car," the court cannot, in a suit by the insured to recover for the accidental death of his mother, which occurred as she was attempting to pass, in the nighttime, from one car of a fast moving train, across the unvestibuled platforms, to another car, consider the two contracts as one, and so construe them together as to hold that, though the covenants are independent and divisible, the words "while riding as a passenger in a railway passenger car," standing alone, mean while riding anywhere on the car, but when read in connection with the

words contained in the main policy they do not mean while riding on the platform of a passenger car, but only inside the car; and by so construing the two instruments together, and thereby reaching the conclusion that the insured could not recover, the Court of Appeals violated the rule announced in Trabue v. Insurance Co., 121 Mo. 75, and Owings v. McKenzie, 133 Mo. 325. The subject-matters of the two contracts are distinct, and they cannot be held to be one contract for the purpose of limiting the language of the one by the terms of the other.

## *Certiorari.*

JUDGMENT QUASHED.

*Robert A. Brown* and *A. Leonard Guitar* for relator.

(1)   The opinion and decision of the Kansas City Court of Appeals in construing the language "while riding as a passenger in a railway passenger car" to mean while riding as a passenger on the inside of a passenger car, construed the contract most favorably to the insurance company instead of to the insured, in direct opposition to and in conflict with the controlling decisions of this court, which hold that all such contracts must be construed most favorably to the insured.   Bruner v. Wheaton, 46 Mo. 367; Mathews v. Modern Woodmen, 236 Mo. 342; Shoe Co. v. Casualty Co., 172 Mo. 149.   (2)   The decision of the Kansas City Court of Appeals, in holding that relator could not recover, and in construing the words "while riding as a passenger in a railway passenger car" to mean while riding as a passenger inside of a passenger car, is in conflict with the decisions of the St. Louis Court of Appeals of this State.   Styx v. Indemnity Co., 175 Mo. App. 171; Hays v. Benevolent Assn., 127 Mo. App. 195; Bradshaw v. Benevolent Assn., 112 Mo. App. 435. The decision of respondents, being in conflict with the decisions above cited, estab-

lishes different rules of law in different parts of the State and renders this court "supreme in name only." Section 8 of Amendment of 1884; Section 3, article 6, Constitution of 1875. This court has said that the Constitution means just what it says, and that it is the duty of this court to see that the laws of the State are uniform, and to that end to exercise its authority through the writ of *certiorari*. State ex rel. v. Broaddus, 238 Mo. 201; State ex rel. v. Broaddus, 245 Mo. 135. (3) In holding that the supplemental contract of insurance under consideration should be construed in the light of the conditions and provisions of the contract of insurance issued to the relator, the respondents set aside and held for naught the decisions of this court, which held that before contracts may be read and construed together in order to determine the proper construction to be placed upon the provisions thereof, such contracts should be between the same parties, intended to accomplish the same purpose and executed in the course of the same transaction. Owings v. McKenzie, 133 Mo. 334; Kennedy v. Broderick, 216 Fed. 138; Trabue v. Ins. Co., 121 Mo. 84. (4) The words "while riding as a passenger in a railway passenger car," used in the insurance supplement, mean "while riding in, on or upon a railway passenger car." Such words must be given the meaning they ordinarily bear, and if there be any doubt as to the meaning of the language used in an insurance policy every doubt must be resolved in favor of the insured. Andrews v. State, 70 S. E. 111; Ins. Co. v. Muir, 126 Fed. 926; King v. Ins. Co., 28 S. E. 662; Berliner v. Ins. Co., 53 Pac. 918; Theobold v. Assurance Co., 26 Eng. L. & Eq. 432; Barber v. Ins. Co., 165 Ill. App. 239; DePue v. Ins. Co., 166 Fed. 183; Ramsey v. Ins. Co., 160 Mo. App. 238.

*O. C. Mosman* and *Vinton Pike* for judgment defendant.

(1)   The question before the Court of Appeals was: Was Mrs. Schmohl "riding as a passenger in a railway passenger car," while she was attempting to pass from one car to another of a rapidly moving train? The question was not new or unusual. It has been before the courts of New York and the Federal courts of this circuit. In Aetna Insurance Company v. Vandecar, 86 Fed. 282, the terms of the policy were "while riding as a passenger in a passenger conveyance using steam." Vandecar was on the platform steps when he was hurt. The appeal was heard by Sanborn, Thayer and Riner, JJ. The majority held that Vandecar's accident was not within the terms of the policy. They did not stick to the letter merely, but gave the terms a reasonable interpretation, as the courts of this State have always done in such cases. The words used "clearly indicated the intention of the parties," and that they meant to stipulate for indemnity while the insured was riding in an exceptionally safe place. "One who rides as a passenger in a passenger conveyance using steam, occupies such a place. But one who rides on, but not in, such a conveyance, whether on the platform, or on top of the car, or on the machinery beneath it, occupies a very dangerous place," and the parties neither agreed nor intended to agree to insure one who rode in such a position. The same question was also before the court in Van Bokkelen v. Travelers Insurance Company, 54 N. Y. S. 307, affirmed by the Court of Appeals, 60 N. E. 1121. There the terms were "while riding as a passenger in any passenger conveyance." Mrs. Schmohl was insured as a passenger or traveler. The supplement applied "solely and exclusively to passengers or travelers," and "the position that the company is not liable cannot be controverted." This utterance of this court was in

the case of Brown v. R. P. Assur. Co., 45 Mo. 225, and it is the last and only utterance of this court directly to the point. In Banta v. Casualty Co., 134 Mo. App. 222, the St. Louis Court of Appeals cited the Vandecar and Van Bokkelen cases with approval. (2) "In" is a word used to express the relation of presence, existence, situation, inclusion, action, etc., within limits, as of place, time, condition, circumstances, etc. In this policy it expressed the relation of place, and means "within the bounds or limits of; within; as in the house; in the city; to keep a subject in mind." Cent. Dict. "On," as used of place or position, with regard to the upper and external part of something. Cent. Dict. "In the whole; in guard, and the like" are archaic, now more commonly expressed by on. *Idem.* A statute required an officer to post a notice in his office, and he returned that he had posted it at his office. "This is a clear non-compliance with the statute, too apparent and substantial to require further consideration than mere mention." "Certain it is that these words (in and at) are not synonymous, and may have very different meanings, depending upon their connection." Hilgers v. Quinney, 51 Wis. 71. "The definition of 'in' by Webster is 'within;' 'inside of;' and with such meaning the preposition is commonly and generally used." Verdine v. Olney, 77 Mich. 320. See also New York v. Second Ave. R. Co., 31 Hun, 245. " 'In' signifies the quality of being interior." Scales v. Mas. Pro. Assn., 70 N. H. 491. "When we think merely of the local or geographical point, we use at; when we think of inclusive space, we employ in." Stand. Dict. At. (3) Judge Thayer's dissenting opinion in the Vandecar case very aptly and decisively requires Mrs. Schmohl to have been inside the four walls of the car to be within the protection of the policy supplement. He objected to a literal application of the terms, because to his mind it put too much

stress on a single word; and he would take more lati-
tude in considering the circumstances—a course which
in most cases would conduct the court into difficult
complications. But as the facts in this case are clearly
settled and stated, he would have had no difficulty in
concluding there could be no recovery. This was his
view of what the policy meant. (4) In construing con-
tracts the plain written terms are to be given effect,
whatever the result may be. "The rule that an insur-
ance contract is to be construed most strongly against
the insurer is to be resorted to only where the language
or some of the terms of the contract, after the use of
such helps as are proper, remain of doubtful import."
Foot v. Ins. Co., 61 N. Y. 571. "The prime rule for
the construction of contracts is that the intent of the
parties as disclosed by their language be given effect."
Hanna v. Land Co., 126 Mo. 1; Knapp v. Publishers,
127 Mo. 53. "A contract of insurance differs in no
respect from other contracts, as to the rules for their
interpretation." Renshaw v. Ins. Co., 103 Mo. 604.
*Verba fortius accepiuntur contra proferentem* is not
exclusively a canon of this court. It is as liberally
applied in New York and the Federal courts as in this
State. 9 Cyc. 590, 591; Matthews v. Ins. Co., 154
N. Y. 449; Rickerson v. Ins. Co., 149 N. Y. 307. The
Kansas City Court applies the rule every day.
Newman v. Standard Accid. Co., 177 S. W. 803; Still
v. Ins. Co., 172 S. W. 625; Ins. Co. v. K. C. El. L. Co.,
171 S. W. 580; Matthews v. Modern Woodmen of
America, 236 Mo. 326. The words here are clear and
unambiguous. So the courts had said in the cases
above cited, and so says relator. But relator asked
the Court of Appeals to consider them doubtful or in-
definite, and then in the language of the St. Louis
Court of Appeals, "to seize upon them with violent
hands and distort them so as to include a risk clearly
excluded by the insurance contract." Mitchell v. Acci-

dent Co., 179 Mo. App. 7. He stipulated that the court should "first construe the terms of the policy and supplement." "Previous and contemporary transactions and facts may be very properly taken into consideration to ascertain the subject-matter of a contract, and the sense in which the parties may have used particular terms, but not to alter or modify the plain language which they have used." Brawley v. U. S., 96 U. S. 174; Merriam v. U. S., 107 U. S. 443; The Calabria, 24 Fed. 607. It is not necessary that the parties to each instrument be the same, if the instruments are known to all the parties. McDonald v. Wolff, 40 Mo. App. 309.

GRAVES, J.—*Certiorari* to the Kansas City Court of Appeals. The case may be stated in small compass. Judge JOHNSON of the Court of Appeals in an opinion filed, thus states some of the substantial facts:

"This is an action on a policy of accident insurance issued by defendant, June 7, 1912, and in force at the time of the injury and death of the assured. The defense is that the cause of the injury was one for which the policy provided no indemnity. A jury was waived, the cause was submitted on agreed facts, judgment was rendered for plaintiff and defendant appealed.

"Defendant, for a premium paid by the plaintiff, Arthur J. Schmohl, and upon his application, issued to him an accident policy in which his mother, Anna Schmohl, was named as beneficiary and which, in its 'Schedule of Indemnities,' provided for the payment of $10,000 to the beneficiary in the event of his death resulting from injuries sustained 'while a passenger in or on a public conveyance provided by a common carrier for passenger service (including the platform, steps, or running-board of railway or street railway cars.)' Attached to this policy and as part of the

obligations assumed by defendant in consideration of the stipulated premium, was a supplementary policy in which Anna Schmohl, the mother, was the assured and plaintiff the beneficiary. The undertaking of defendant in this 'supplement' was 'to insure Anna Schmohl, the mother of the insured under policy No. F. B.-4420, issued to Arthur J. Schmohl against loss resulting from bodily injuries effected directly and independently of all other causes through external, violent and accidental means (suicide, sane or insane not included) while riding as a passenger in a railway passenger car or vessel licensed for the transportation of passengers, provided in either case by a common carrier and propelled by mechanical power.'

"Mrs. Schmohl was accidentally killed in Germany, June 20, 1913, while riding as a passenger on a passenger train, and this suit is for the recovery of the indemnity provided in the supplementary policy.

"Mrs. Schmohl, accompanied by her friend, Frau Pauline Frank, became a passenger on a train running from Esslingen to Nuertingen. The cars were similar in interior arrangement to the ordinary American passenger coach, but the train was not vestibuled and the platform at the ends of the cars were unenclosed. Where two cars were coupled together there was rather a wide space between the platforms which was spanned by a sheet iron folding bridge slightly arched. A person in going from one car to the next would cross this bridge which was not provided with guards. On the inside of the door of each car a notice was posted which read: 'Stepping onto the platform and step-board while the car is in motion is forbidden.'

"Mrs. Frank testified that before boarding the train, Mrs. Schmohl spoke of not feeling well, that she was cold, 'that everything around her seemed to dance in a circle, and that she had a feeling as if spiders were running up her legs.' After the train started

and while they were seated in a car, Mrs. Schmohl declared her intention of going to the next car, to see if a mutual friend who was intending to go on that train were there.    Mrs. Frank testified, 'I dissuaded her from doing so, saying that passengers were forbidden to leave the car while the train is in motion and that a penalty is attached to doing so.'    This warning was disregarded, Mrs. Schmohl replying that 'she always does it in America,' left her seat and proceeded to the platform.    Mrs. Frank observed her as she disappeared through the door.    No one saw her fall from the train and, as stated in the agreed facts, 'it does not appear and is not known by what means or from what cause deceased fell or was thrown from said platform or steps.'

"It is agreed that 'after she had passed through the door on to the platform and while on the platform aforesaid, she fell or was thrown from the train to the ground, receiving injuries from which she instantly died.'

"The only reasonable inference that may be drawn from the disclosed facts and circumstances is that the assured accidentally fell or was thrown by the motion of the train while she was endeavoring to pass from one car to another.    The burden is upon plaintiff to show that the cause of his mother's death was accidental and violent.    The latter fact being conceded, the existence of the former will be presumed in the absence of proof to the contrary.    In showing a violent cause plaintiff made out a prima-facie case of an accidental cause.    [Insurance Co. v. McConkey, 127 U. S. 661; Travelers' Ins. Co. v. Melick, 65 Fed. 178; Paul v. Travelers' Ins. Co., 112 N. Y. 472; Lovelace v. Travelers' Protective Assn., 126 Mo. 104; Collins v. Fidelity & Casualty Co., 63 Mo. App. 253; Phelan v. Travelers' Ins. Co., 38 Mo. App. 640; Young v. Railway Mail Assn., 126 Mo. App. l. c. 335; U. S. Mutual

Accident Assn. v. Barry, 131 U. S. 100; Beile v. Pro-
tective Assn. of America, 155 Mo. App. 629.]

"It is conceded the accident occurred while Mrs.
Schmohl was riding upon a moving train on the open
platform or unguarded bridge and, therefore, while she
was not in the interior of a passenger car, and the prin-
cipal question for our solution is whether or not she
was 'riding as a passenger in a railway passenger
car' within the meaning the supplementary policy
was intended by the parties to give to that term."

Later on in the opinion the learned jurist takes up
both provisions in the two policies, and ultimately
holds that the words used in the supplemental policy
restricts the right of the beneficiary therein, relator
herein, to recover only for such accident as might have
occurred to relator's mother whilst actually within the
car in which she was riding. This holding of course
defeated relator's action, for the reason that the acci-
dent occurred while on the platform of the car, and
not whilst the deceased was within the car. The rul-
ing, it is averred, is contrary to our rulings, and hence
the case is here.

I.    It will be observed from the statement of this
case, that there can be but two possible questions.
First, whether the Court of Appeals was wrong in
holding that the two contracts must be considered as
one, and, secondly, if right in this construction,
whether or not their views upon the merits of the case
is diverse from views previously expressed by this
court. Of course, there would also be the question as
to whether or not the construction of the language in
the supplemental contract was in accord with the
views of this court. This case was tried upon an
agreed statement of facts which is not set out in the
opinion, yet the substance thereof is so set out. The
learned judge of the Court of Appeals says:

"The weight of authority supports the view that such expressions in an accident policy as 'riding in or on a public conveyance' operated by a common carrier for the transportation of passengers should be construed as extending the liability of the insurer to injuries received while the insured is upon the platform of a moving train. The term 'public conveyance,' when applied to a passenger train on a steam railway, refers to the train, and not to any particular unit which enters into its composition. A passenger is in or on a public conveyance when he is riding as a passenger inside a car, on the platform of a car, or as in the Berliner case (Berliner v. Ins. Co., 53 Pac. 918), when he is riding on the locomotive by invitation. And we agree with Judge THAYER's view in the Vandecar case (Aetna L. Ins. Co. v. Vandecar, 86 Fed. 282) that to construe the word 'in' used in the phrase 'in a passenger conveyance' as meaning only inside a passenger car, is highly technical and, in our opinion, ignores the significance that should be attached to the selection by the insurer of the word 'conveyance' which, generally, is understood as referring to the entire train. As he well observes, people in ordinary conversation employ the terms 'by train,' 'on a train' and 'in a train' as synonymous, and it would be just as sensible to say that 'in a train' requires the insured to be inside a passenger car as to say that 'in a passenger conveyance' was intended to have no other meaning. All rules for the judicial interpretation of language employed in written contracts are merely a means to an end, and the end being to ascertain and enforce the mutual intention of the parties. Such intention is to be gathered from the whole instrument by weighing and giving proper consideration to all pertinent stipulations and expressions. Since the ordinary man who makes contracts is not expert in orthography, words should be given their common

everyday meaning and definitive refinements should be ignored.

"With these rules in mind we turn to the policy to gather from all its terms and provisions the expressed mutual intention of the parties with respect to the liability defendant assumed for injuries Mrs. Schmohl might receive, while traveling on steam railways. While the covenants in the supplementary policy were independent and divisible, both policies were parts of the same transaction, were supported by a single consideration and were one contract. In substance, defendant agreed to insure plaintiff and his mother for the stated premium and prescribed the terms upon which it would become liable as an insurer for personal injuries to each. To plaintiff it said: 'If your death results from injuries you received while a passenger in or on a public conveyance provided by a common carrier, including the platforms of railway cars, we will pay your mother $10,000,' expressly granting to plaintiff, who is a young man, permission to ride on the platform of cars, but as to injuries the mother might receive, the liability defendant assumed was hedged about by most restrictive language. Not only was no express permission given her to ride upon car platforms while the train was in motion, but the broader term 'in or on a public conveyance' employed in the principal policy was narrowed in the supplementary policy to 'in a railway passenger car.'

"If common sense is to prevail, as it should, in the construction of contracts, can there be any reasonable doubt that defendant clearly provided for immunity from liability except for injuries this comparatively old and inactive woman might sustain while riding inside a passenger car? Circumstances alter cases. As shown, 'in,' 'on' and 'by' may be used as synonyms and so may 'in' and 'inside.' The context and disclosed contractual purposes must often decide.

Plaintiff's interpretation of 'in a railway passenger car' gives that phrase the same meaning and scope as the phrase employed in the principal policy to define the liability for injuries to plaintiff, with its express permission to him to ride on car platforms. Obviously the parties did not intend the liability of the insurer should be the same in either event, but did endeavor to restrict liability for injuries to Mrs. Schmohl to those she might receive while riding inside a passenger car.

"The learned trial judge erred in rendering judgment for plaintiff. The judgment is reversed."

This portrays clearly the views of the Court of Appeals. They are (1) that the two contracts must be construed together to get the intent of the supplemental contract, and (2) when thus construed together, the meaning of the latter is that no recovery can be had, unless the accident occurred whilst the deceased was "in a passenger car" and not while she was on the platform thereof. We have, therefore, first, the question, whether under our rulings the Court of Appeals was right in holding that the two contracts must be construed together, and secondly, if they must be so construed, whether or not the construction given violates our holdings. There may also be the further question, whether or not, if the Court of Appeals erred in holding that the two instruments must be construed together the said court was in error, according to our rulings, in giving to the supplemental contract the construction given. The questions we take up in order.

II. It will be observed that the Court of Appeals says that the supplemental contract was attached to the principal contract. Copies of the two contracts are in the record. As a matter of fact they are on separate sheets, but this much we can gather from the statement of facts given by the learned judge who

wrote the opinion. The two papers refer to different subject-matters, i. e., one to indemnity for the accidental injury of Arthur J. Schmohl, and the other to indemnity for an accidental injury to Anna Schmohl. In the principal policy the obligation to pay is from the insurance company to Anna Schmohl, whilst in the latter the obligation is upon the part of the insurance company to Arthur J. Schmohl. The contracts are separately signed—the main contract by the insurance company and Arthur J. Schmohl; the "Supplement," as it is headed and styled, is signed by the insurance company and Anna Schmohl. In these regards the two instruments are wholly separate and distinct, creating entirely different obligations and liabilities. The only things in common are (1) that the two instruments were executed at the same time and (2) that a single premium seems to have covered both contracts. What proportion was to carry the one or the other does not appear. The Court of Appeals says: "While the covenants in the supplementary policy were independent and divisible, both policies were parts of the same transaction, were supported by a single consideration and *were one* contract." The italics are ours. The court might have added that the covenants were not only independent and divisible, but were very different. The two contracts do not cover the same subject-matter, and as a fact create different and distinct causes of action. They are executed by different parties, and the holding that they constituted *one contract* for the purpose of limiting the language of the one by the terms of the other was error. Not only was it error, but it was in violation of our rule in Trabue v. Insurance Co., 121 Mo. 75, wherein we held that although the two subject-matters of insurance were in fact covered by one policy or contract, yet we should separate the provisions of the contract, as we found the same applicable to the different subject-

266Mo.38

matters of insurance. The subject-matter of the two contracts here are as distinct as they were there. The ruling is likewise violative of our rule in Owings v. McKenzie, 133 Mo. 323, where we discuss the doctrine as to what is necessary to make two instruments executed at the same time, one contract.

III. The Court of Appeals concede in the opinion before us that, unless they can limit the meaning of the language used in the supplemental contract by the language found in the main contract, then the words used in the supplemental contract "while riding as a passenger in a railway passenger car" are broad enough to entitle recovery for an accident happening on the platform of such a car. Holding as we do that such court could not call these two instruments one contract for the purpose of limiting the meaning of this language in the contract sued on in this case, it follows that by their own concession the opinion is wrong. Their holding is predicated solely on the ground that they could give this language a limited meaning by reading it in connection with the other contract. Standing alone they say the plaintiff is entitled to recovery, and on that proposition cite and discuss the cases. If they entrench upon the decisions of this court in holding the two instruments to be one contract, as we hold, it necessarily follows that their judgment should be quashed, and it is so ordered. Other questions raised become immaterial under the above views. All concur, except *Bond, J.,* who dissents.