### WILSON et al. v. ALEXANDER.

(Circuit Court of Appeals, Fifth Circuit. November 23, 1921.)

No. 3753.

1. Courts ⊜⇒264(4)—Federal court has ancillary jurisdiction to enjoin suit in state court to relitigate matters determined by its decree.

A federal court has ancillary jurisdiction to interpret and enforce its judgments, decrees, or orders, and to that end may entertain a supplemental bill, after decree, to enjoin prosecution of a suit in a state court which attacks in a substantial respect the effect of such decree.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Courts ⊗⊃264 (4)—Federal court should enjoin suit in state court to alter effect of its decree.**

Where the decree of a federal court foreclosed liens on property set up in a cross-bill and adjudged that a conveyance of the property by defendants to cross-complainant made in satisfaction of the decree vested absolute title in him free from any right, title, or claim of defendants, and made a sale unnecessary, a subsequent suit in a state court by one of the defendants to establish an alleged agreement made prior to the decree, by which cross-complainant was to hold title to the property in trust, as security only, *held* an attempt to alter the effect of the decree of the federal court, which entitled cross-complainant to an injunction to restrain its prosecution.

Appeal from the District Court of the United States for the Northern District of Texas; W. Lee Estes, Judge.

Suit in equity by McCornick & Co., Bankers, against the Texas Loan & Trust Company and others. On supplemental cross-bill by Fred P. Wilson and others, executors of the will of J. B. Wilson, deceased, against C. H. Alexander. From the decree cross-complainants appeal. Reversed.

Francis Marion Etheridge, of Dallas, Tex. (Etheridge, McCormick & Bromberg, of Dallas, Tex., on the brief), for appellants.

R. H. Ward, of Wichita Falls, Tex., and John H. Bickett, of San Antonio, Tex., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. To a bill filed in the United States District Court for the Northern District of Texas by McCornick & Co., Bankers, a corporation of Utah, attacking a certain issue of bonds of the Texas Loan & Trust Company, and a deed of trust executed to a trustee to secure the same, J. B. Wilson was made a defendant, as the holder of said bonds, together with C. H. Alexander, the Texas Loan & Trust Company, and L. R. Terry, trustee under said trust deed. Wilson filed a cross-bill, asserting the ownership of said bonds, received from Alexander, and seeking a foreclosure of said trust deed and the enforcement of a vendor's lien on said property arising on a purchase-money note. To the cross-bill the complainant and all the defendants were made parties. The cross-bill alleged that the entire issue of bonds was originally owned by Alexander, who was also the sole stockholder of the Texas Loan & Trust Company, that he had pledged said bonds to Wilson to secure a loan of $250,000 which fell due, and that Wilson had become the owner of said bonds, and also had taken up and held a purchase-money note of the Texas Loan & Trust Company payable to one Dees, carrying a vendor's lien on the property covered by said trust deed, known as the Northern Texas Building, in the city of Dallas, Texas.

Alexander entered an appearance to the cross-bill, which prayed the foreclosure of the trust deed securing said bonds, and of said vendor's lien, against all parties, including Alexander, and "that an accounting be had of all matters set up in the cross-bill, and that all parties to the

cause be required to set up and to have adjusted all their rights, claims, and equities in the premises." By written stipulation filed in said cause it was agreed by all the parties that the original bill should be dismissed without prejudice to Wilson's cross-bill; that a final decree should be entered on the cross-bill for all the relief therein prayed, the allegations of said cross-bill being taken as true; that, if he preferred, Wilson might dismiss his cross-bill without prejudice.

Wilson did not elect to dismiss his cross-bill, and a final decree was entered thereon which adjudged: That the allegations of the cross-bill were true, that Wilson was entitled to the relief prayed therein. that the $250,000 of bonds were duly issued and secured by said deed of trust, and that they passed to the hands of Wilson, who became the owner and holder thereof. It adjudged the default in interest to have occurred, and the right therefrom for a decree for the full amount of principal and interest, and for the foreclosure of said deed of trust. It also gave judgment for the $25,000 purchase-money note, and decreed the foreclosure of the vendor's lien securing the same. It further decreed that the defendants in said cross-bill (naming each), "and all persons claiming under them, be and they are hereby foreclosed of all right, title, claim, and interest in or to the said real estate." It further decreed that as the Texas Loan & Trust Company, pursuant to resolutions of its directors and stockholders, had on that day executed and delivered to Wilson a deed conveying all of said property in sat-isfaction of said judgments so decreed, it was unnecessary to order a sale under the decree, and, the costs having been paid, it was ordered that, on the decree being entered and the record completed in the cause, it be no longer retained on the dockets of said court. The decree bears date June 7, 1912.

On April 25, 1919, C. H. Alexander, one of the persons named as having been "foreclosed of all right, title, claim, and interest in or to the said real estate," filed in the district court of Dallas county, Tex., a petition which undertook to recite the acquisition by Alexander of his interest in the stocks and bonds of the Texas Loan & Trust Company and the loans made by Alexander on the security of the stocks and bonds and the suit instituted by McCornick & Co., Bankers. He alleged that said issue of bonds and the trust deed securing same were void under the Constitution of Texas, as not having been issued by the corporation for actual money, and that while the deed from the Texas Loan & Trust Company recited that it was made in satisfaction and release of the judgment rendered on June 7, 1912, in said suit of McCornick & Company, Bankers, v. Texas Loan & Trust Company et al., it was in truth made in order to secure the indebtedness due by Alexander to Wilson and to place him in possession as a mortgagee; that this was in pursuance of an agreement made prior to the execution and delivery of said deed, Wilson agreeing to dismiss his cross-bill; that Wilson had collected from the rents of the property more than enough to discharge the indebtedness due from Alexander to Wilson; and prayed for an accounting and a decree canceling and holding for naught said deed to the North Texas Building, as well as the $250,000 of bonds.

Wilson thereupon filed, in the United States District Court for the Northern District of Texas, a bill, styled a supplemental cross-bill and bill of revivor, entitled in the said cause of McCornick & Co., Bankers, v. Texas Loan & Trust Company et al., reciting the former proceedings in said cause and the decree entered therein, alleging that by said decree it was adjudged that Alexander was foreclosed from asserting any ownership of, claim to, or interest in said property, or any part thereof, and that the deed made to said Wilson by the Texas Loan & Trust Company was in satisfaction of said decree in said cause. He prayed an injunction against the prosecution of so much of said state court suit as attempted to disregard or overthrow the decree in said cause above recited, and that said decree be construed and enforced, so as to forever bar Alexander from in any wise asserting any ownership of, claim to, or interest in said property, or any part thereof, or from asserting in said state court, or otherwise, that he has any claim thereto. Wilson having died pendente lite, his executors were made parties plaintiff in his stead.

Alexander answered said supplemental bill, first moving therein to dismiss the same: (a) Because it sought to enjoin a proceeding in a state court, in violation of Judicial Code, § 265 (former Rev. St. § 720, Comp. St. § 1242). (b) Because complainant can interpose said decree as res judicata by defense in said state court case, and the presumption is that the state court will correctly construe it and give it full force and effect, and it must first appear that the state court has not done this before this court has jurisdiction. (c) Because the parties are not identical, in that Scott Greene is a party to the state court suit and was not to that in the United States District Court. (d) Because there are issues of law and fact set up in said state court petition which were not presented, litigated, or determined in the cause in this court. (e) Because, while it appears from the allegations of said supplemental bill and those in the state court petition that Wilson had such legal title to the mortgage bonds of said Texas Loan & Trust Company as would enable him to foreclose the mortgage securing the same, there was not presented to said United States court, and it did not determine by its decree, whether in foreclosing the lien on said property Wilson was acting under a collateral agreement with Alexander that, when he took title to said property, he should hold it as trustee for Alexander, which is the gravamen of the state court suit, which issue is not hostile to the judgment obtained by Wilson in this court, but is in complete harmony and subordination thereto.

Alexander further answered said bill, asserting again the allegations of his state court petition, except those attacking the validity of the stock and bonds of the Texas Loan & Trust Company, averring that they were made through a mistake of fact on the part of his counsel, and that the stock and bonds were issued for full value and in compliance with the Constitution and laws of Texas. By consent all proceedings in the state court suit were stayed pending the trial of the supplemental bill in the United States court. No preliminary injunction was applied for.

The original and cross bills and all amendments thereto and answers and cross-bills filed in the said case of McCornick & Co., Bankers, v. Texas Loan & Trust Company et al. were offered in evidence; also the appearance of C. H. Alexander in said case, the agreement made therein, under which the decree of June 7, 1912, on the cross-bill of J. B. Wilson, was entered; the substance of said decree; the resolutions of the board of directors and stockholders of the Texas Loan & Trust Company, signed by C. H. Alexander as president, reciting said decree, and that the Texas Loan & Trust Company cannot pay the judgments awarded thereby, except by the conveyance of all of its property, which is not worth more than the amounts so adjudged, and directing the sale of said property to Wilson and the execution of deeds thereto in satisfaction of said judgments, reciting that the draft of said deeds had been submitted to the meeting and were approved, also the deed from said Texas Loan & Trust Company to said Wilson, and an agreement, signed by Wilson and Alexander, dated February 1, 1913, reciting that Wilson was the owner of said North Texas Building, and giving Alexander an option until September 1, 1913, to acquire it from Wilson, who is therein stated to have the absolute title to and possession of said property. This agreement expressly stipulates that it shall extend only to September 1, 1913, and thereafter Alexander shall have no further right to acquire said property, and the agreement then expires. This agreement recites that, of the original $250,000 debt due by Alexander to Wilson, $200,000 had been paid by the sale of the $250,000 of bonds held as collateral, and that it left, with interest due thereon, $92,842.85 on June 1, 1912, for which sum Alexander was giving his note. A copy of Alexander's petition, filed in the state court on April 25, 1919, and also a copy of a petition filed in said state court by Scott Greene to recover on said note of $92,942.85, dated June 1, 1912, executed by Alexander to Wilson and indorsed by him to Scott Greene, were introduced. No oral evidence was introduced.

On June 25, 1921, the cause was heard and a final decree rendered, perpetually enjoining said Alexander from prosecuting so much of said state court suit as attacked the validity of said 250 bonds issued by said Texas Loan & Trust Company, but refusing all other relief, and dismissing said supplemental cross-bill, except as to the injunction granted. Wilson's executors have appealed from the decree dismissing said supplemental cross-bill and denying all further injunction, assigning as error the refusal to enjoin the prosecution of the state court suit as prayed, and the failure to hold that the state court suit constituted an original attack on the decree of said United States suit of June 7, 1912; that it constituted an attempt to relitigate issues finally adjudicated thereby, which decree must stand, unless vacated or modified by said United States court in said cause.

[1] If it be true that the proceeding filed by Alexander in the state court attacks, in a substantial respect, the effect of the decree rendered in the United States court on June 7, 1912, there can be no doubt of the jurisdiction of the United States court to entertain proceedings to construe and give full effect to its decree, and to protect one holding

under a deed made in accordance therewith. A case of such a character is not affected by Judicial Code, § 265 (Rev. St. § 720), prohibiting the enjoining by a United States court of a proceeding in a state court except under a law relating to proceedings in bankruptcy. In such case the United States court is protecting its previously acquired jurisdiction, which has resulted in a decree giving rights which are attacked by subsequent proceedings brought in a state court.

A striking illustration of this is afforded by the case of Gunter, Attorney General, etc., v. Atlantic Coast Line, 200 U. S. 273, 26 Sup. Ct. 252, 50 L. Ed. 477. In a former suit, brought by parties in privity with the Atlantic Coast Line Railway, a decree was rendered adjudging that a railroad had a contract with the state exempting it from certain taxation. The state had become a party to said suit. For at least 25 years thereafter no further attempt was made to tax the property so declared exempt. Thereafter another attempt was made, and suits to collect such taxes were instituted in the state courts. Thereupon the defendant in said state court suits began proceedings in the United States Circuit Court for the District of South Carolina, filing a bill as ancillary to the former case, terminated for more than 25 years, setting up that the decree therein was res judicata as to the existence of the tax exemption, that the suits in the state courts sought to relitigate said question, and prayed an injunction. After holding that the state of South Carolina was a party to the original suit in the United States court, the court held an injunction would properly issue to enjoin the further progress of the suits in the state courts, and that in such a case section 720 of the Revised Statutes did not apply. Gunter v. Atlantic Coast Line, 200 U. S. 273, 292, 26 Sup. Ct. 252, 50 L. Ed. 477.

Where a cotton mill had been sold out under foreclosure proceedings in the United States Circuit Court, and thereafter a bill was filed in the chancery court of a state, seeking to redeem the mortgage on the ground that the entire proceedings in the United States court were void, because the complainant and defendant were citizens in fact of the same state, an ancillary bill was maintained to enjoin the state court suit and to assert the title acquired under the foreclosure proceedings. It was insisted that the injunction suit was not an ancillary, but an original, bill, and therefore the injunction forbidden by Revised Statutes, § 720. But the Supreme Court of the United States held:

"Under such circumstances there can be no doubt that the federal court may inquire and determine whether its proceedings were a nullity, and such inquiry is not an original proceeding, but ancillary to those which have already been had. In other words, a federal court, exercising a jurisdiction apparently belonging to it, may thereafter, by ancillary suit, inquire whether that jurisdiction in fact existed. It may protect the title which it has decreed as against every one a party to the original suit and prevent that party from relitigating the questions of right which have already been determined. French, Trustee, v. Hay, 22 Wall. 250; Cole v. Cunningham, 133 U. S. 107; Root v. Woolworth, 150 U. S. 401. In this case, on page 410, it was said: 'It is well settled that a court of equity has jurisdiction to carry into effect its own orders, decrees, and judgments, which remain unreversed, when the subject-matter and the parties are the same in both proceedings. The general rule upon the subject is thus stated in Story's Equity Pleading (9th Ed.) § 338:

"A supplemental bill may also be filed, as well after as before a decree; and the bill, if after a decree, may be either in aid of the decree, that it may be carried fully into execution." * * * The jurisdiction of courts of equity to interpret and effectuate their own decrees by injunctions or writs of assistance in order to avoid the litigation of questions once settled between the same parties, is well settled. Story's Eq. Jur. § 959; Kershaw v. Thompson, 4 Johns. Ch. 609, 612; Schenck v. Conover, 13 N. J. Eq. (2 Beasley) 220; Buffum's Case, 13 N. H. 14; Sheperd v. Towgood, Tur. & Rus. 379; Davis v. Black, 6 Beav. 393. In Kershaw v. Thompson, the authorities are fully reviewed by Chancellor Kent, and need not be reexamined here.'" Riverdale Mills v. Manufacturing Co., 198 U. S. 188, 195, 25 Sup. Ct. 629, 632 (49 L. Ed. 1008).

As was said in another case:

"In such cases, where the federal court acts in aid of its own jurisdiction and to render its decree effectual, it may, notwithstanding sec. 720, Revised Statutes, restrain all proceedings in a state court which would have the effect of defeating or impairing its jurisdiction. Sharon v. Terry, 36 Fed. 337, per Mr. Justice Field; French v. Hay, 22 Wall. 250; Deitzsch v. Huedekoper, 103 U. S. 494." Julian v. Central Trust Co., 193 U. S. 93, 112, 24 Sup. Ct. 399, 407 (48 L. Ed. 629).

The right to plead the decree of the federal court in defense to Alexander's suit in the state court is no reason why a resort should not be had to the equitable jurisdiction of the federal court. There is no remedy available at law in the federal court, except by the ancillary proceedings instituted in said court. National Surety Co. v. State Bank of Humboldt, 120 Fed. 593, 602, 56 C. C. A. 657, 61 L. R. A. 394; St. Louis & San Francisco Ry. Co. v. McElvain (D. C.) 253 Fed. 123; Gunter v. Atlantic Coast Line, 200 U. S. 273, 293, 26 Sup. Ct. 252, 50 L. Ed. 477.

[2] The question therefore recurs: Does the claim set up in the state court suit trench upon the rights Wilson had acquired under the decree of June 7, 1912? The cross-bill in that case set up that Wilson was the owner of the 250 bonds, and the decree so adjudged; the cross-bill prayed an accounting between all the parties, and that they be required to set up all their rights, claims, and equities, in the premises; and the decree adjudged that all right, title, claim, or interest of Alexander in and to the real estate was foreclosed, and that the deed from the Texas Loan & Trust Company was made in satisfaction of the debts evidenced by the decree and rendered any sale under the decree unnecessary.

The state court bill seeks to assert an agreement, claimed to be then existing, by which Alexander held an equitable interest in the property, and by which Wilson went into possession of the property only as a mortgagee in possession, liable to account to Alexander for rents, issues, and profits. It seems to us that a decision by the state court in favor of Alexander would result in a radical alteration of the terms, and certainly of the effect, of the decree of June 7, 1912. The legal effect of this decree is to adjudge that the deed of the Texas Loan & Trust Company to Wilson vested in him the absolute title to said real estate, and that Alexander and the other named defendants had no right, title, interest, or claim therein or thereto.

If this decree was incorrect, and if at the time Alexander had a right

to redeem from foreclosure, and if Wilson was to hold only as a mortgagee in possession, it should have been so declared in the decree. Certainly it cannot be attempted in proceedings in another court to ingraft a trust, claimed to exist at the time, on the decree, which expressly debars Alexander, the party claiming as the beneficiary, of all right, title, interest, or claim.

No evidence tending to prove the existence of any such agreement, as is now asserted, appears in the statement of evidence in this case. None appears to have been offered. On the contrary, an agreement dated February 1, 1913, was introduced, reciting that Wilson was then the absolute owner of the property, and permitting Alexander to acquire it by September 1, 1913, providing that, if not acquired by this time, Alexander should have no further right to acquire the same.

We think that the court erred in not construing its former decree as vesting in Wilson the absolute title to said real estate as against Alexander and the other parties to the cross-bill in said United States court suit, and in not enjoining Alexander from prosecuting said suit in the state court to the extent prayed for in said supplemental cross-bill.

So much of the decree of the court below as refuses the injunction prayed for and dismisses the supplemental cross-bill is reversed, and the case remanded for further proceedings consistent with this opinion.