MONTANA AUTO FINANCE CORPORATION, RESPONDENT,
v. BRITISH & FEDERAL FIRE UNDERWRITERS
ET AL., APPELLANTS.

(No. 5,574.)

(Submitted October 28, 1924.   Decided December 16, 1924.)

[232 Pac. 198.]

*Automobiles—Insurance Against Confiscation—Interpretation
of Contract—Ambiguities Resolved in Favor of Insured—
Complaint—Insufficiency as to One Codefendant—Joint De-
murrer—Waiver.*

Automobile Insurance—Confiscation Bond Attached to Policy—Inter-
pretation of Instruments.
    1.   Where a confiscation coverage bond insuring the conditional
    vendor of an automobile against loss by confiscation of the car
    and a policy issued by another company insuring it against other
    risks to which it was attached were executed contemporaneously
    as one transaction, both instruments must be considered in arriv-
    ing at the intention of the parties.

Same—Confiscation by Canadian Officers—Construction of Contract.
    2.   Where an automobile was insured against fire, theft and colli-
    sion in the United States and Canada, and another company in-
    sured it by a separate instrument attached to the policy, against
    confiscation "by municipal, federal or state authorities" without
    limiting its liability to confiscation within the limits of the United
    States, and the car was confiscated in Canada, *held* that, constru-
    ing the two instruments together, the latter company was liable
    for the loss sustained and that its contention that the terms
    "municipal," "federal" and "state" have no application to the
    Canadian government, is without merit.

Same—Ambiguity in Contract—Doubt Resolved in Favor of Insured.
    3.   Since insurance companies prepare their own contracts and
    the insured has no voice in their drawing, any ambiguity or
    uncertainty in them must be construed in favor of the insured.

Same—Company not Party to Confiscation Bond not Liable for Loss.
    4.   In an action against two insurance companies, one of which
    insured an automobile against fire, theft, *etc.*, and the other
    against confiscation, in which recovery was sought for loss sus-
    tained on account of confiscation, the latter company only was
    liable; hence a judgment against the former was unauthorized.

Complaint—Insufficiency as to One Codefendant—Joint Demurrer not
Waiver of Right to Complain on Appeal.
    5.   The objection that the complaint does not state a cause of ac-
    tion is never waived; hence the rule that where two or more

---

    1.   Construction of interdependent instruments, see note in 5 **Ann.
Cas.** 149.

parties demur jointly and a cause of action is stated against one of them, the demurrer is properly overruled, does not deprive a party sued jointly on a contract to which he was not a party of the right to raise the question on appeal that the complaint did not support a judgment against him.

*Appeal from District Court, Silver Bow County; Joseph R. Jackson, Judge.*

ACTION by the Montana Auto Finance Corporation against the British & Federal Underwriters of the Norwich Union Fire Insurance Society, Limited, and the Fidelity & Deposit Company of Maryland. Judgment for plantiff and defendants appeal. Affirmed as to second-named defendant, and reversed and remanded as to first-named defendant, with directions.

*Messrs. Day & Choate,* for Appellants, submitted a brief; *Mr. I. W. Choate* argued the cause orally.

*Mr. Earle N. Genzberger,* for Respondent, submitted a brief and argued the cause orally.

Appellants in their brief have raised for the first time the question of the severability of this policy of insurance, and contend that the so-called confiscation coverage bond was not a part of the policy of insurance, and that therefore the defendant, British & Federal Fire Underwriters of the Norwich Union, is an improper party defendant, and that the complaint fails to state facts sufficient to constitute a cause of action against that defendant. We contend that while two companies, both made defendants herein, are liable on different portions of the instrument, the printed policy of insurance, together with the several "riders" or "indorsements" thereon, including the "Confiscation Coverage," constitute the policy of insurance. (See 32 C. J. 1158–1160.) "Where contracts are evidently part of the same transaction, a person who becomes a party to one of such contracts which provides for the other, is bound by the terms of both." (13 C. J. 713, citing *Male* v. *Lafferty,* 105 Fed. 564.) We there-

fore submit to the court that the entire transaction constitutes but one policy; and that both insurance companies are properly joined as defendants on their joint enterprise, and that the policy of insurance, having insured the automobile while "within the United States and Canada," the "confiscation coverage" likewise extends over the same territory as the original policy, unless expressly excepted.

MR. JUSTICE RANKIN delivered the opinion of the court.

This is an action to recover upon a policy of insurance for loss caused by the confiscation of an automobile by Canadian officials. The facts alleged in the complaint material to the issues presented by this appeal may be summarized as follows: A policy of insurance was issued at Great Falls, Montana, by the defendant British & Federal Fire Underwriters of the Norwich Union Fire Insurance Society, Limited, to T. Deloli, insuring an automobile, sold to him under a conditional contract of sale by the plaintiff Montana Auto Finance Corporation, against loss by fire, theft or collision "while within the limits of the United States (exclusive of Alaska, the Hawaiian Islands, and Porto Rico) and Canada." At the same time and place there was issued by the defendant Fidelity & Deposit Company of Maryland to the plaintiff what is denominated a confiscation coverage bond, by the terms of which the company agreed to indemnify plaintiff "against all direct pecuniary loss which the assured may sustain caused by the confiscation by municipal, federal or state authorities of said automobile by reason of the violation  *  *  *  of the provisions of any municipal, federal or state law." This bond was attached to the insurance policy issued by the defendant British & Federal Fire Underwriters, but this last-named company was not a party to the bond. For convenience these companies will be referred to hereafter as the "British Company" and the "Fidelity Company."

The complaint, after reciting the foregoing facts, sets forth that the automobile was taken from T. Deloli, the conditional vendee, and seized and sold by federal, state and municipal authorities of Canada, by reason of the violation by Deloli of federal, state, and municipal laws of that country. The defendants interposed a joint general demurrer to the complaint, which was overruled by the court, and they then declined to plead further. Thereupon judgment was entered for the plaintiff against both defendants for $1,233.40, from which judgment the defendants have appealed.

Counsel for defendants attack the sufficiency of the complaint, .and insist that it discloses upon its face that the seizure and confiscation of the automobile by Canadian officers within the Dominion of Canada is not "confiscation by municipal, federal or state authorities" by reason of the violation of the provisions of any "municipal, federal or state law," within the meaning of the language of the coverage bond. They contend that these terms apply solely to officers and laws of the United States, and hence that the car was never insured against confiscation in Canada.

In construing the confiscation bond, reference must be had to the policy of the British Company; otherwise the contract [1] with the Fidelity Company would be indefinite, uncertain and incomplete. In the first instance, without recourse to that policy, there is no way to identify the automobile insured against loss by confiscation under the Fidelity Company bond, except by this language in the bond "the automobile described in policy No. 27482 issued by the British & Federal Fire Underwriters Insurance Company." The bond then reads: "This bond to be used only in connection with conditional sale indorsement where embezzlement coverage is also given." This reference is to the policy of the British Company which executed the "embezzlement coverage" and the "conditional sale contract indorsement." The bond also refers to the collision policy thus: "This company shall not be liable * * * for any loss

❋  ❋  ❋  through any of the perils insured against under the above-mentioned policy." It further provides "that no assignment or change of interest hereunder shall bind this company unless the consent of the company issuing the policy to which this is attached shall be indorsed thereon"; and then again, referring to the policy of the British Company, there appears in the confiscation bond the following: "Any cancellation or other termination of the above-mentioned policy, shall also, at the same time, terminate all liability of this company under this obligation."

From the foregoing provisions and indorsements, together with the fact that both contracts of insurance are a part of the same instrument and were executed contemporaneously as one transaction, it is clear that in interpreting the confiscation bond, the entire contract of insurance must be considered to give it meaning and to determine the intention of the parties. (*Herbst* v. *Lowe,* 65 Wis. 316, 26 N. W. 751.)

Under the terms of the British Company's policy the car [2] was to be insured against fire, theft and collision while within the limits of Canada as well as the United States, all of which the Fidelity Company is presumed to have known at the time it insured the automobile against confiscation, and, if it desired to limit its liability to loss from confiscation while the car was within this country, it should have said so in its policy.

Defendants insist, however, that the policy cannot be construed as having insured the car in Canada, because the words "federal," "state," and "municipal" have a very limited meaning and pertain solely to the government of the United States. The term "federal" is, *inter alia,* "commonly used to express a league or compact between two or more states" (2 Bouvier's Law Dictionary, Rawle's Third Rev., 1192) to become united under one central government. Reference to the preamble of the British North America Act of 1867 discloses that the Dominion of Canada may with propriety

74    Auto F. Corp. *v.* British etc. Underwriters.    [Dec. T. '24

[72 Mont. 69.]

be designated a federal government; it reads: "Whereas the province of Canada, Nova Scotia, and New Brunswick have expressed their desire to be federally united into one dominion," *etc.*    (30 & 31 Vict., Chap. 3.)    By the Act of 1867 the three provinces named above were formed into "one dominion."

The word "state" is defined by Webster as "a political body, or body politic; the whole body of people united under one government whatever may be the form of the government."

The term "municipal," when strictly used, generally applies to a city, but it has been commonly used in a much broader sense.    Blackstone says: "    *    *    *    Municipal or civil law; that is, the rule by which particular districts, communities, or nations are governed, being thus defined by Justinian, *'Jus civile est quod quisque sibi populus constituit.'*    I call it municipal law in compliance with common speech; for, though strictly that expression denotes the particular customs of one single *municipium* or free town, yet it may with sufficient propriety be applied to any one state or nation, which is governed by the same laws or customs."    (1 Blackstone's Commentaries, 72.)

In view of the foregoing, we deem the interpretation of the words "federal," "state," and "municipal," contended for by the defendants, too restrictive.

If there is any uncertainty as to whether these terms are **[3]** employed in their restricted signification so as to have reference solely to the United States or are used in an enlarged sense so as to include Canada, then that construction should be adopted which is beneficial to the insured (*Ginell* v. *Prudential Ins. Co.,* 119 Misc. Rep. 467, 196 N. Y. Supp. 337), or, to state the rule applicable in language approved by this court: " 'No rule in the interpretation of a policy is more fully established, or more imperative and controlling, than that which declares that in all cases it must be liberally construed in favor of the insured, so as not to defeat without a plain necessity his claim to the indemnity, which in making the insurance was his object to insure.'    (May on Insurance, sec. 175.)"

(*Holter Lumber Co.* v. *Fireman's Fund Ins. Co.*, 18 Mont. 282, 45 Pac. 209.)

It is a matter of common knowledge that insurance companies prepare their own contracts of insurance. The language of the policy is their language. They do not permit the insured to have a voice in the drawing of his own contract; nor does he negotiate with reference to its terms in the sense that negotiations are carried on before agreements are reached in ordinary contracts. (Joyce on Insurance, p. 594.) Policies of insurance are invariably complex and are understood by laymen with difficulty, and as a result the insured generally makes a request for the kind of insurance he desires and then signs "on the dotted line" upon a formidable appearing printed form with the provisions of which the average assured has slight, if any, acquaintance. The policies are prepared by skilled lawyers retained by the insurance companies, who through years of study and practice have become expert upon insurance law, and are fully capable of drawing a contract which will restrict the scope of the liability of the company with such clearness that the policy will be free from ambiguity, require no construction, but construe itself. Because of reasons such as these, whenever the contract of insurance is so drawn as to be ambiguous, uncertain and to require construction, the courts of this country resolve the doubt in favor of the insured and against the insurer, in accordance with the rule *contra proferentem.* (Joyce on Insurance, par. 222; 32 C. J. 1156; *Julius* v. *Metropolitan L. Ins. Co.*, 299 Ill. 343, 17 A. L. R. 956, 132 N. E. 435; *Greer-Robbins Co.* v. *Pennsylvania Ins. Co.*, 47 Cal. App. 63, 190 Pac. 187; *New York etc. S. S. Co.* v. *Aetna Ins. Co.* (D. C.), 192 Fed. 212.)

We cannot narrow the range of the insurer's obligation by giving to the terms "municipal," "federal," and "state" the technical and restricted construction for which the defendants contend, for under the facts disclosed by the record we think

they apply not only to the United States but with equal propriety to Canada.

It is argued in behalf of the British Company that, regardless of the construction to be placed upon the words "federal," "state," and "municipal," the judgment against it is unwarranted because it was not a party to the confiscation policy, and that, therefore, no cause of action is stated against it. With this we agree. While the demurrer was joint and general, and it is the rule in this jurisdiction that "where two or more parties demur jointly and a cause of action is stated against one of them the demurrer is properly overruled" (*Rand* v. *Butte Elec. Ry. Co.,* 40 Mont. 398, 107 Pac. 89; *Poe* v. *Sheridan County,* 52 Mont. 279, 157 Pac. 185; *Cummings* v. *Reins Copper Co.,* 40 Mont. 599, 107 Pac. 904), nevertheless, the objection that the complaint does not state facts sufficient to constitute a cause of action is never waived (*Clark* v. *Oregon Short Line,* 38 Mont. 177, 99 Pac. 298), and where the complaint is so defective that it will not support the judgment, the judgment will be set aside. (*Ellinghouse* v. *Ajax Livestock Co.,* 51 Mont. 275, L. R. A. 1916D, 836, 152 Pac. 481; *Cole* v. *Helena L. & Ry. Co.,* 49 Mont. 443, 143 Pac. 974; *Shober* v. *Blackford,* 46 Mont. 194, 127 Pac. 329.) The British Company was not a party to the confiscation policy; hence the complaint does not state a cause of action against it.

The judgment is affirmed as to the defendant Fidelity & Deposit Company of Maryland, and reversed and the cause remanded as to the defendant British & Federal Fire Underwriters of the Norwich Union Fire Insurance Society, Limited, with directions to dismiss the complaint against it.

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICE STARK and HONORABLE FRANK P. LEIPER, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, disqualified, concur.

MR. JUSTICE GALEN, being absent on account of illness, takes no part in the foregoing decision.